# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

CHAMBERS OF
**STEPHANIE A. GALLAGHER**
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
**BALTIMORE, MARYLAND 21201**
**(410) 962-7780**
**Fax (410) 962-1812**

January 18, 2017

LETTER TO COUNSEL

> RE: *Erin Elizabeth Walters v. Commissioner, Social Security Administration*;
> Civil No. SAG-16-415

Dear Counsel:

On February 14, 2016, Plaintiff Erin Elizabeth Walters petitioned this Court to review the Social Security Administration's final decision to deny her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF No. 1). I have considered the parties' cross-motions for summary judgment. (ECF Nos. 15, 18). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both parties' motions, reverse the Commissioner's judgment, and remand the case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

Ms. Walters filed her claims for benefits on February 28, 2012, alleging a disability onset date of January 15, 2011. (Tr. 229-41). Her claims were denied initially and on reconsideration. (Tr. 163-70, 175-78). A hearing was held on June 10, 2014, before an Administrative Law Judge ("ALJ"). (Tr. 42-74). Following the hearing, the ALJ determined that Ms. Walters was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 11-41). The Appeals Council denied Ms. Walters's request for review. (Tr. 2-4). Thus, the ALJ's decision constitutes the final, reviewable decision of the Agency.

The ALJ found that Ms. Walters suffered from the severe impairments of "degenerative disc disease, asymptomatic HIV, and major depressive disorder, recurrent." (Tr. 17). Despite these impairments, the ALJ determined that Ms. Walters retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can stand and walk only two hours and sit for six hours total in an 8-hour day; climb ramps or stairs frequently; cannot climb ladders, ropes, or scaffolds; and can only occasionally balance, stoop, kneel, crouch, or crawl. She can perform the following 90 percent of the time: understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods; completing a normal workday and work week without interruptions from

psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; interacting appropriately with the general public; responding appropriately to criticism from supervisors; and setting realistic goals or making plans independently of others.

(Tr. 22).  After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Walters could perform her past relevant work as an office helper and that, therefore, she was not disabled.  (Tr. 34-36).

Ms. Walters advances several arguments on appeal.  Specifically, Ms. Walters contends that: (1) the ALJ did not engage in a proper analysis of Listing 14.08; (2) the ALJ erroneously assessed Ms. Walters's RFC; (3) the ALJ failed to properly evaluate Ms. Walters's credibility; (4) the ALJ failed to properly evaluate the medical opinions of Ms. Walters's treating physicians; and (5) the ALJ erred in disregarding testimony by the VE.  I agree that the ALJ did not engage in a proper analysis of Listing 14.08, and that the ALJ erroneously assessed Ms. Walters's RFC. I therefore remand the case for further analysis.  In so holding, I express no opinion as to whether the ALJ's ultimate determination that Ms. Walters was not entitled to benefits was correct or incorrect.

Beginning with the successful arguments, Ms. Walters first contends that the ALJ did not engage in a proper listing analysis.  Specifically, Ms. Walters argues that the ALJ failed to properly evaluate Listing 14.08.[1]  The ALJ's opinion included the following:

The State agency physicians, who are skilled and experienced in reviewing records and assessing the impairments and limitations that are documented in those records, concluded that the claimant's impairments did not meet or equal the requirements of any section of Appendix 1.  In particular, the undersigned has considered Listings 1.04, 12.04, and 14.08.  The records that have been submitted since the State agency completed its review do not warrant a different

---

[1] Plaintiff further contends that the ALJ failed to discuss the criteria of Listings 1.04 and 12.04.  Pl. Mot. 8-14. However, neither contention, standing alone, warrants remand.  Beginning with Listing 12.04, which pertains to affective disorders, the ALJ applied the special technique for evaluation of mental impairments, and determined that Ms. Walters had "mild restriction" in activities of daily living, "moderate difficulties" in social functioning, and concentration, persistence or pace, and "only one or two episodes of decompensation." (Tr. 20-21); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. I have carefully reviewed the record, and I agree that no listings are met. Turning to Listing 1.04A, which pertains to disorders of the spine, the ALJ found that there was no evidence of nerve root compression, sensory, or reflex loss.  *See* (Tr. 17-26).  However, although the ALJ does provide some evidence to support her conclusion, the evidence as a whole is somewhat equivocal. *Compare* (Tr. 25-26) (discussing Ms. Walters's normal findings in strength, range of motion, and gait upon examination, intact sensation, a negative straight leg test, and an MRI showing minimal secondary foraminal stenosis,) *with* (Tr. 17-18) (discussing Ms. Walters's positive straight leg test, antalgic gait and lumbar tenderness upon examination, and a CT scan showing S1 nerve root compression). Although these deficiencies might not warrant remand standing alone, because the case is being remanded on other grounds, the ALJ should, on remand, expand her Listing analysis to cite specific medical evidence pertaining to each subsection of Listing 1.04 the ALJ deems relevant. In particular, where there is evidence that could be used to support one of the relevant criteria, such as a positive straight leg raising test, the ALJ should explain her evaluation of that evidence in connection with her Listing conclusions.

*Erin Elizabeth Walters v. Commissioner, Social Security Administration*
Civil No. SAG-16-415
January 18, 2017
Page 3

> determination at the third step of the evaluation process.  No treating or examining
> physician or psychologist has identified medical signs or findings that meet or
> medically equal the requirements of any section of Appendix 1.  The undersigned
> has reviewed the records and finds that the claimant does not have impairments
> that meet or equal the requirements of any section of Appendix 1.

(Tr. 19-20).  It is clear that the ALJ believed there to be ample evidence to identify and discuss
Listings 1.04, 12.04, and 14.08.  However, after identifying those listings, the ALJ did not
discuss any of the relevant criteria for Listing 14.08.  The Commissioner argues, quite correctly,
that the ALJ's analysis need not be in the "step three" section of the opinion in order for the
opinion to be adequate as a whole.  In this case, though, the ALJ does not mention the relevant
criteria at any point in the opinion.  Notably, the ALJ does not address whether Ms. Walters has
evidence of infection, malignant neoplasms, skin lesions, HIV encephalopathy, or HIV wasting
syndrome.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 14.08.  Moreover, the ALJ's general
commentary on Ms. Walters's HIV diagnosis does not suffice to constitute "specific application
of the pertinent legal requirements to the record evidence."  *Radford v. Colvin,* 734 F.3d 288,
291-92 (4th Cir. 2013); *see* § 14.08 (noting additional requirements following documentation of
HIV infection).  Accordingly, remand is warranted for further analysis that might permit
appellate review.

Next, Ms. Walters contends that the ALJ erroneously assessed her RFC.  Pl. 14-17; 21-
23.  Specifically, she argues that the ALJ failed to support her RFC determination with
substantial evidence.  *Id.*  Social Security regulations require an ALJ to include "a narrative
discussion of [the] claimant's symptoms and medical source opinions."  *Thomas v. Comm'r, Soc.
Sec.*, 2011 WL 6130605, at *4 (D. Md. Dec. 7, 2011).  In doing so, an ALJ must "build an
accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel*, 227 F.3d 863,
872 (7th Cir. 2000), as amended (Dec. 13, 2000).  Here, the ALJ failed to provide "an accurate
and logical bridge" between Ms. Walters's limitations and the ALJ's RFC determination. Most
significantly, in formulating the RFC assessment, the ALJ noted that Ms. Walters would be off
task 10% of the time.[2] (Tr. 22). The ALJ, however, failed to explain the basis for her conclusion.
Notably, the ALJ found that Ms. Walters had "moderate difficulties" in concentration,
persistence, or pace.  (Tr. 21).  The ALJ also noted that Ms. Walters performed well on
examination, and cited Ms. Walters's testimony that she did not have "any difficulty with
memory or concentration."  *Id.*  However, the ALJ also noted the treating psychiatrist's
determination that Ms. Walters had "marked limitations" in her ability to "maintain attention and

---

[2] Specifically, the ALJ noted, in relevant part, that:

> [Ms. Walters] can perform the following 90 percent of the time: understanding, remembering, and
> carrying out detailed instructions; maintaining attention and concentration for extended periods;
> completing a normal workday and work week without interruptions from psychologically based
> symptoms; performing at a consistent pace without an unreasonable number and length of rest
> periods; interacting appropriately with the general public; responding appropriately to criticism
> from supervisors; and setting realistic goals or making plans independently of others.

(Tr. 22).

concentration for extended periods," (Tr. 19), and the State agency's determination that Ms. Walters had "some difficulties with tasks involving complex mental demands," (Tr. 27). Regardless, the ALJ failed to explain how these findings translate into a determination that Ms. Walters would be off task 10% of the time. An explanation of how that percentage was calculated is significant, since a one percent increase could preclude competitive employment. *See Schlossnagle v. Colvin*, 2016 WL 4077672, at *4 (August 1, 2016) (holding that "being off task more than 10% of the time during an eight-hour workday would preclude all competitive employment."). Accordingly, without further explanation, I am unable to ascertain how the ALJ assessed Ms. Walters's difficulties in staying on task, and how those difficulties impacted the RFC assessment. In light of this inadequacy, I must remand the case to the Commissioner for further analysis. On remand, the ALJ should consider the impact of Ms. Walters's limitations on the RFC determination, and explain the reasons for that finding, citing substantial evidence.

Turning to the unsuccessful arguments, Ms. Walters next argues that the ALJ failed to properly evaluate her credibility. Pl. Mot. 14-17. Specifically, she believes the ALJ erred by failing to "provide any proper rationale as to why she did not find [Ms. Walters's] statements concerning the intensity, persistence, and limiting effects of [her] symptoms credible." Pl. Mot. 14. "In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians…and any other relevant evidence in the case record." SSR 96-7P, 1996 WL 374186, at *1 (S.S.A. July 2, 1996). Contrary to Ms. Walters's assertion, the ALJ properly evaluated her credibility. Notably, the ALJ found that Ms. Walters's allegations of disability were "inconsistent with a disabling level of impairments" and disproportionate to the objective medical record. *See* (Tr. 24-31). Specifically, the ALJ noted that, upon examination, "[Ms. Walters] had a normal gait, with full range of motion of all four extremities," "had a negative straight leg raising test," and had "no sensory deficits to soft touch or pinprick and no evidence of allodynia or hyperalgesia." (Tr. 25). In addition, the ALJ noted Ms. Walters's testimony that she "she was doing well and had no complaints," and her treating physician's statements that Ms. Walters's "health status," "mental status," and "mood" had improved, (Tr. 26). Moreover, the ALJ noted that Ms. Walters's statements regarding her daily activities further belied her allegations, including her admission that she was working as recently as February 2012, "cares for her daughter part-time," "go[es] to the gym on occasion with a friend," "goes shopping in stores for food and personal items," "uses public transportation," and "goes to the local public library." (Tr. 24-25). Ultimately, the ALJ's detailed evaluation of the record evidence against Ms. Walters's statements regarding her physical and mental symptoms amply supports the ALJ's conclusion that Ms. Walters's alleged limitations were not entirely credible. Thus, contrary to Ms. Walters's argument, the ALJ properly evaluated Ms. Walters's credibility, and supported her findings with substantial evidence.

Next, Ms. Walters argues that the ALJ assigned inadequate weight to the opinion of her treating physicians, Drs. Agwu and Wissow. Pl. Mot. 17-18. A treating physician's opinion is given controlling weight when two conditions are met: 1) it is well-supported by medically acceptable clinical laboratory diagnostic techniques; and 2) it is consistent with other substantial

evidence in the record. *See Craig*, 76 F.3d 585 (4th Cir. 1996); *see also* 20 C.F.R. § 404.1527(d)(2). However, where a treating source's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Craig*, 76 F.3d at 590. If the ALJ does not give a treating source's opinion controlling weight, the ALJ will assign weight after applying several factors, such as, the length and nature of the treatment relationship, the degree to which the opinion is supported by the record as a whole, and any other factors that support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6). The ALJ must also consider, and is entitled to rely on, opinions from non-treating doctors. *See* SSR 96-6p, at *3 ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

Contrary to Ms. Walters's assertion, the ALJ properly evaluated the opinions of Drs. Agwu and Wissow. Beginning with the former, Dr. Agwu opined that Ms. Walters "was incapable of performing a full-time job 8 hours per day, five days per week, on a regular and continuing basis[.]" (Tr. 19). Additionally, Dr. Agwu opined that Ms. Walters is "able to stand and walk less than about two hours (with normal breaks) during an 8-hour workday," "ha[s] a limited ability to sit," and "can lift and carry only ten pounds frequently." *Id.* Moreover, Dr. Agwu opined that Ms. Walters "need[s] the freedom to shift at will between sitting or standing/walking," "needs to lie down at unpredictable times during an 8-hour workday," and would be "absent from work three times a month." *Id.*

The ALJ assigned "little weight" to Dr. Agwu's opinion because it was inconsistent with the medical evidence. (Tr. 33-34). Specifically, the ALJ noted that "the course of treatment pursued by [Dr. Agwu] has not been consistent with what one would expect if [Ms. Walters] were truly disabled[.]" (Tr. 33). Indeed, the ALJ noted that Ms. Walters's treatment "has been routine and conservative," and cited her normal examination findings and "good response to physical therapy." (Tr. 33-34). In addition, the ALJ found that "Dr. Agwu's opinion contrasts sharply with and is not supported by the other evidence of record, including [Ms. Walters's] own statements[.]" (Tr. 33). Specifically, the ALJ cited 2013 and 2014 examinations noting that Ms. Walters "looked well," had "no back problems," had a "normal gait pattern," "was not having breakthrough pain," and "was doing better since beginning physical therapy." (Tr. 33-34). Moreover, the ALJ noted that Dr. Agwu "relied quite heavily on the subjective report of symptoms and limitations provided by [Ms. Walters]," but found, as addressed above, "good reasons for questioning the reliability of [Ms. Walters's] subjective complaints." (Tr. 33). Accordingly, the ALJ found that Dr. Agwu's "own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if [Ms. Walters] were in fact disabled, and [Dr. Agwu] did not specifically address this weakness." (Tr. 34). These inconsistencies, in addition to others cited by the ALJ, provide sufficient justification for the ALJ's decision to accord less weight to Dr. Agwu's opinion.

The ALJ also properly evaluated Dr. Wissow's opinion. Notably, Dr. Wissow opined that Ms. Walters "had marked limitations in ability to remember locations and work-like procedures," "maintain attention and concentration for extended periods," "perform activities within a

schedule," "be punctual," and "maintain regular attendance." (Tr. 19). Additionally, Dr. Wissow opined that Ms. Walters had marked limitations in the ability to "work in coordination with or proximity to others without being distracted," "interact appropriately with the general public," "accept instructions and respond appropriately to criticism from supervisors, "get along with coworkers without distracting them or exhibiting extreme behaviors," and "respond appropriately to changes in the work setting[.]" *Id.* Moreover, Dr. Wissow opined that Ms. Walters's "impairments or treatment would cause her to be absent from work more than three times a month and that she was not capable of performing a full-time job, working 8-hours a day, 5 days per week, on a regular and continuing basis." *Id.*

The ALJ assigned "little weight" to Dr. Wissow's opinion because it was inconsistent with the medical evidence. (Tr. 32-33). Notably, the ALJ found that "Dr. Wissow's opinion contrasts sharply with and is not supported by the other evidence of record, including [Ms. Walters's] own statements[.]" (Tr. 33). The ALJ noted that "there is no objective evidence that [Ms. Walters] has been psychiatrically hospitalized," and cited several examinations noting Ms. Walters's "good" mood and improved mental status. *Id.* (citing 553-601). In addition, the ALJ noted that "[Ms. Walters's] depression was well controlled with 25 mg of Zoloft daily," and that, at times, Ms. Walters had been "on no medications" at all. *Id.* (citing 339-512, 530-52). Moreover, the ALJ noted that Dr. Wissow found that "[Ms. Walters] had a much brighter affect, was much more optimistic, and was not at all irritable" upon examination. *Id.* (citing 553-601). Furthermore, Ms. Walters's admitted daily activities, (Tr. 33-34), and her statements to multiple healthcare professionals regarding her stable mental condition, (Tr. 33) (citing 553-601, 745-863), further belie Dr. Wissow's opinion. Accordingly, the ALJ properly evaluated Dr. Wissow's opinion and supported her conclusion with substantial evidence. Remand on this basis is therefore unwarranted.

Next, Ms. Walters argues that the ALJ erred in disregarding testimony by the VE that she was not eligible for work.[3] Pl. Mot. 18-20. As an initial matter, an ALJ is afforded "great latitude in posing hypothetical questions," *Koonce v. Apfel*, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999), and need only pose those that are based on substantial evidence and accurately reflect a claimant's limitations. *See Copeland v. Bowen*, 861 F.2d 536, 540-41 (9th Cir. 1988). Likewise, a hypothetical question is unimpeachable if it adequately reflects the RFC for which the ALJ had sufficient evidence. *See Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005). In this case, the ALJ framed a hypothetical based on the RFC. (Tr. 63-64). In response, the VE stated that Ms. Walters could perform several jobs existing in the national economy. (Tr. 64-65). Subsequently, Ms. Walters's attorney asked a second hypothetical that questioned whether the VE's testimony changed with the addition of several new limitations.[4] (Tr. 73-74). In response

---

[3] Ms. Walters also argues that the VE failed to provide responses consistent with the DOT. Pl. 21-23. Because the ALJ's RFC analysis warrants remand, the ALJ should, on remand, address the deficiencies identified by Ms. Walters to ensure that the VE's testimony is in accordance with the DOT.

[4] Specifically, Plaintiff's hypothetical added that Ms. Walters "would be relegated to sedentary work and would not be able to sit, stand or walk more than two hours in an eight-hour workday; would be expected to take unscheduled breaks of up to two hours in an eight-hour workday to lie down and rest[;]…and as the result of various physical and

*Erin Elizabeth Walters v. Commissioner, Social Security Administration*
Civil No. SAG-16-415
January 18, 2017
Page 7

to the second hypothetical, the VE stated that there was no "employment available in the local or regional economy that such a hypothetical individual could perform[.]"  (Tr. 74).  Ms. Walters contends that the ALJ improperly disregarded this admission in finding her able to perform light work.  I disagree.  The VE's conclusion in the second hypothetical depended on limitations absent from the RFC.  Because the second hypothetical was altered to include impairments for which the ALJ did not find sufficient evidence, the ALJ was under no obligation to credit Plaintiff counsel's hypothetical or adhere to the VE's answer.  Indeed, the VE's testimony was relevant only if the ALJ also concluded that there was sufficient evidence that Ms. Walters "was relegated to sedentary work," and required the additional proffered limitations.  *Id*. However, as noted above, the ALJ cited substantial evidence from the medical record that Ms. Walters was capable of performing light work with the limitations contained in the RFC.  As a result, the ALJ's hypothetical was proper, and remand is unwarranted.

For the reasons set forth herein, Ms. Walters's Motion for Summary Judgment (ECF No. 15) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 18) is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's judgment is REVERSED IN PART due to inadequate analysis.  The case is REMANDED for further proceedings in accordance with this opinion.  The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge

---

psychiatric symptoms and limitations, as well as side effects of regular medications, the person would be expected to be off task greater than 20 percent of the eight-hour workday, and would be expected to have absenteeism of up to three times a month or more from any job."  (Tr. 73-74).